1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FREDERICK AMBROSE WARE III,              No.  2:21-cv-00203 AC

12                  Plaintiff,

13        v.                                  **ORDER**

14   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,

15

16                  Defendant.

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20   of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

21   plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for

22   summary judgment will be DENIED.  The matter will be reversed and remanded to the

23   Commissioner for further proceedings.

24   ////

25   ////

26   ////

27   ----

     [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New

28   York, 476 U.S. 467, 470 (1986).

                                                    1

1   I.  PROCEDURAL BACKGROUND

2      Plaintiff applied for DIB on March 29, 2018.  Administrative Record ("AR") 171-175.[2]

3   The disability onset date was alleged to be January 17, 2017.  Id.  The application was

4   disapproved initially and on reconsideration.  AR 100, 105-116.  On August 18, 2014, ALJ Sara

5   Gillis presided over the hearing on plaintiff's challenge to the disapprovals.  AR 37-67

6   (transcript).  Plaintiff, who appeared with his counsel David Shore, was present at the hearing.

7   AR 37.  Robin Scher, a Vocational Expert ("VE"), also testified at the hearing.  Id.

8      On August 4, 2020, the ALJ found plaintiff "not disabled" under Sections 216(i) and

9   223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 12-32 (decision), 33-36 (exhibit

10  list).   On December 2, 2020, the Appeals Council denied plaintiff's request for review, leaving

11  the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-5

12  (decision and additional exhibit list).

13     Plaintiff filed this action on February 2, 2021.  ECF No. 1; see 42 U.S.C. § 405(g).  The

14  parties consented to the jurisdiction of the magistrate judge.  ECF No. 14.  The parties' cross-

15  motions for summary judgment, based upon the Administrative Record filed by the

16  Commissioner, have been fully briefed.  ECF Nos. 18 (plaintiff's summary judgment motion), 19

17  (Commissioner's summary judgment motion), 22 (plaintiff's reply).

18  II.  FACTUAL BACKGROUND

19     Plaintiff was born in 1960 and accordingly was a person of advanced age under the

20  regulations when he filed his application.[3]  AR 41.  Plaintiff has at least a high school education,

21  and can communicate in English.  Id.  Plaintiff worked as an outside sales representative from

22  October 2002 through January 2017.  AR 196.

23  III.  LEGAL STANDARDS

24     The Commissioner's decision that a claimant is not disabled will be upheld "if it is

25  supported by substantial evidence and if the Commissioner applied the correct legal standards."

26  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

27

28
---
[2]  The AR is electronically filed in OCR format at ECF No. 12-2 (AR 1 to AR 692).
[3]  See 20 C.F.R. § 404.1563(e) ("person of advanced age").

2

1  Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"

2  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

3       Substantial evidence is "more than a mere scintilla," but "may be less than a

4  preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

5  evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

6  Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

7  record can constitute substantial evidence, only those 'reasonably drawn from the record' will

8  suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

9  Although this court cannot substitute its discretion for that of the Commissioner, the court

10  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

11  evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

12  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

13  court must consider both evidence that supports and evidence that detracts from the ALJ's

14  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

15       "The ALJ is responsible for determining credibility, resolving conflicts in medical

16  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

17  Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

18  which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

19  278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

20  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."

21  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th

22  Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

23  evidence that the ALJ did not discuss").

24       The court will not reverse the Commissioner's decision if it is based on harmless error,

25  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

26  ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

27  2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

28  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

1

IV.  RELEVANT LAW

2

Disability Insurance Benefits and Supplemental Security Income are available for every

3

eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff

4

is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

5

determinable physical or mental impairment . . ..'" <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987)

6

(quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

7

The Commissioner uses a five-step sequential evaluation process to determine whether an

8

applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

9

<u>Barnhart v. Thomas</u>, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

10

process to determine disability" under Title II and Title XVI).  The following summarizes the

11

sequential evaluation:

12

13

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

14

20 C.F.R. § 404.1520(a)(4)(i), (b).

15

Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

16

<u>Id.</u> §§ 404.1520(a)(4)(ii), (c).

17

18

19

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

<u>Id.</u> §§ 404.1520(a)(4)(iii), (d).

20

21

22

Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

<u>Id.</u> §§ 404.1520(a)(4)(iv), (e), (f).

23

24

25

Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Id.</u> §§ 404.1520(a)(4)(v), (g).

26

The claimant bears the burden of proof in the first four steps of the sequential evaluation

27

process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

28

4

1   disabled"), 416.912(a) (same); <u>Bowen</u>, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the

2   sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

3   disabled and can engage in work that exists in significant numbers in the national economy."

4   <u>Hill v. Astrue</u>, 698 F.3d 1153, 1161 (9th Cir. 2012); <u>Bowen</u>, 482 U.S. at 146 n.5.

5                                    V.  THE ALJ's DECISION

6           The ALJ made the following findings:

7                   1. The claimant meets the insured status requirements of the Social
                    Security Act through December 31, 2023.
8

9                   2. [Step 1] The claimant has not engaged in substantial gainful
                    activity since January 17, 2017, the alleged onset date (20 CFR
                    404.1571 et seq.).
10

11                  3. [Step 2] The claimant has the following severe impairments:
                    lumbar and cervical degenerative disk disease, diabetes mellitus with
                    peripheral neuropathy, obesity, and venous insufficiency of the lower
12                  extremities (20 CFR 404.1520(c)).

13                  4. [Step 3] The claimant does not have an impairment or combination
                    of impairments that meets or medically equals the severity of one of
14                  the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
                    (20 CFR 404.1520(d), 404.1525 and 404.1526).
15

16                  5.  [Residual  Functional  Capacity  ("RFC")]  After  careful
                    consideration of the entire record, the undersigned finds that the
                    claimant has the residual functional capacity to perform light work
17                  as defined in 20 CFR 404.1567(b) except the claimant can
                    occasionally climb, stoop, kneel, crouch, or crawl. He can frequently
18                  balance and frequently feel with the bilateral upper extremities.

19                  6. [Step 4] The claimant is capable of performing past relevant work
                    as a sales representative/industrial machinery. This work does not
20                  require the performance of work-related activities precluded by the
                    claimant's residual functional capacity (20 CFR 404.1565).
21

22                  7. The claimant has not been under a disability, as defined in the
                    Social Security Act, from January 17, 2017, through the date of this
23                  decision (20 CFR 404.1520(g)).

24   AR 17-32.

25          As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act.

26   AR 32.

27   ////

28   ////

                                            5

1    VI.  ANALYSIS

2        Plaintiff alleges that the ALJ erred in four primary respects: (1) by failing to properly

3    consider plaintiff's subjective testimony; (2) by failing to consider the third-party testimony of

4    Jennifer Ware; (3) by failing to properly consider plaintiff's alleged trigger finger, bilateral

5    shoulder impingement, depression, and hearing loss as severe impairments at step two; and

6    (4) improperly discounting physician opinions.  ECF No. 18 at 6-13.  Plaintiff argues the failures

7    were harmful, and that the case should be remanded to the Commissioner for further proceedings.

8    Id. at 18.

9        A.  The ALJ Improperly Rejected Plaintiff's Subjective Testimony

10       The ALJ improperly rejected plaintiff's subjective testimony regarding his pain and

11   impairments.  Evaluating the credibility of a plaintiff's subjective testimony is a two-step process.

12   First, the ALJ must "determine whether the claimant has presented objective medical evidence of

13   an underlying impairment which could reasonably be expected to produce the pain or other

14   symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment

15   could reasonably be expected to cause the severity of the symptom she has alleged; she need only

16   show that it could reasonably have caused some degree of the symptom."  Garrison v. Colvin,

17   759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of

18   the pain or fatigue itself is not required.  Id. (internal citations omitted).  Second, if the ALJ does

19   not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering

20   "specific, clear and convincing reasons for doing so."  Id. (internal citations omitted).

21       Here, the ALJ recognizes that plaintiff reported that he cannot drive for more than two

22   hours without pain, and that he takes medications three to four times weekly, including a muscle

23   relaxer, that prevent him from driving.  AR 22.  The plaintiff also reported low back pain with

24   occasional foot or ankle pain, and occasional ankle collapse causing falls.  Id.  Plaintiff also

25   reported neuropathy, and gout affecting his hands and feet.  Id.  With respect to reported daily

26   activity, plaintiff said he can walk up to an hour and sit for up to 30 minutes.  Id.  Plaintiff

27   reported going to physical therapy, but on those days he requires pain medication afterward.  Id.

28   The plaintiff estimated he could lift 20 pounds.  Id.  Plaintiff has a dog, chickens, geese, and fish

1    and can feed them, but he has had difficulty in the past walking over uneven terrain and at times

2    has used his 100-pound dog for counterbalance.  Id.  Plaintiff has used a cane.  Id.  He can do

3    some cooking and is involved with amateur radio.  Id.  He can walk his dog and throw a ball for

4    him.  Id.

5           The ALJ concluded plaintiff's statements concerning the intensity, persistence and

6    limiting effect of his symptoms "are not entirely consistent with the medical evidence and other

7    evidence of record for the reasons explained in [the] decision."  AR 22.  The ALJ's reasons for

8    discounting plaintiff's subjective testimony are legally insufficient.  "An ALJ must identify the

9    specific testimony that lacks credibility, provide clear and convincing reasons why the testimony

10   is not credible, and identify the specific evidence in the record which supports the ALJ's

11   determination."  Talbot v. Colvin, No. SACV 14-1935 JC, 2015 WL 5826808, at *4 (C.D. Cal.

12   Sept. 30, 2015).  Here, it is not clear from her decision which portions of plaintiff's subjective

13   testimony the ALJ accepts and which parts she rejects; instead of linking medical evidence or

14   opinions to the subjective testimony to show how plaintiff's statements are undermined, the ALJ

15   simply moves to an analysis of the medical opinions.  AR 22-31.  It is not clear from the ALJ's

16   medical opinion analysis that the plaintiff's subjective statements are, in fact, undermined.  For

17   example, nothing in the cited medical evidence contradicts plaintiff's complaints of ankle

18   instability leading to falls.  Id.  There is also no mention of plaintiff's pain medication and its

19   impact on plaintiff's ability to drive.  Id.

20          The Commissioner argues that "the ALJ also reasonably found Plaintiff's reported

21   activities did not support his allegations (AR 18, 22)."  ECF No. 19 at 5.  The court finds this to

22   be an inaccurate representation of the actual decision.  The ALJ does not clearly conclude that

23   plaintiff's daily activities contradict his subjective pain statements, she simply lists his reported

24   daily activities.  AR 18, 22.  Further, on their face, the reported activities do not appear to

25   contradict plaintiff's testimony.  Because the ALJ did not provide specific, clear, or convincing

26   reasons for discounting plaintiff's subjective testimony, the court finds error.

27   ////

28   ////

1      B.    Third-Party Statement was Not Properly Considered

2           An ALJ must consider lay testimony as to a plaintiff's symptoms unless she provides

3    reasons germane to the witness for disregarding it.  Lewis v. Apfel, 236 F.3d 505, 511 (9th Cir.

4    2001) ("Lay testimony as to claimant's symptoms is competent evidence that an ALJ must take

5    into account, unless he or she expressly determines to disregard such testimony and gives reasons

6    germane to each witness for doing so.").  Here, the ALJ noted that plaintiff's wife, Jennifer Mills

7    Ware, submitted a statement in which she said plaintiff's pain and medication kept him from

8    doing activities that he previously enjoyed, caused him to constantly change position, prevented

9    him from driving more than two hours, and caused difficulty with his daily self-care and hygiene

10   needs.  AR 31.  The ALJ noted that Ms. Ware said plaintiff could make frozen meals, do some

11   laundry, sweep while sitting down, walk one block, and shop twice weekly.  Id.  The ALJ stated

12   that she was not required to consider how consistent, supported, and persuasive this non-medical

13   testimony is (as she would be required to do with medical testimony), and instead concluded that

14   "per the analysis of persuasiveness of the medical opinions above, [the] statement [is] not

15   persuasive."  AR 31.  As with the rejection of plaintiff's subjective testimony, this is not

16   sufficient.  No germane reason is given for rejecting Ms. Ware's testimony.  Again, an example

17   of a gap in the medical opinion analysis includes the issue of plaintiff's medication and its impact

18   on his ability to drive and complete activities.  The ALJ erred by failing to give germane reasons

19   for rejecting Ms. Ware's third-party report.

20      C.   Error at Step Two

21          "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

22   Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants

23   whose medical impairment is so slight that it is unlikely they would be disabled even if age,

24   education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

25   At step two of the sequential evaluation, the ALJ determines which of claimant's alleged

26   impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  "An impairment is not

27   severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

28   more than a minimal effect on the ability to do basic work activities.'"  Webb v. Barnhart,

1  433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p, 1996 SSR

2  LEXIS 10 (1996)).  The step two severity determination is "merely a threshold determination of

3  whether the claimant is able to perform his past work.  Thus, a finding that a claimant is severe at

4  step two only raises a prima facie case of a disability."  Hoopai v. Astrue, 499 F.3d 1071, 1076

5  (9th Cir. 2007).  At the second step, plaintiff has the burden of providing medical evidence of

6  signs, symptoms, and laboratory findings that show that his or her impairments are severe and are

7  expected to last for a continuous period of twelve months.  Ukolov v. Barnhart, 420 F.3d 1002,

8  1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909,

9  416.920(a)(4)(ii).  An ALJ's finding that a claimant is not disabled at step two will be upheld

10  where "there are no medical signs or laboratory findings to substantiate the existence of medically

11  determinable physical or mental impairment."  Ukolov, 420 F.3d at 1005.

12      Here, plaintiff contends the ALJ erred by finding his alleged impairments of trigger finger

13  and bilateral shoulder impingement not medically determinable, and his depression and hearing

14  loss non-severe.  ECF No. 18 at 9-12.  With respect to trigger finger, the ALJ stated that "[n]o

15  records show diagnosis of trigger thumbs and thus with no objective findings or tests to support a

16  diagnosis, the undersigned finds this is not a medically determinable severe impairment."  AR 18.

17  However, plaintiff points out in his briefing that examining physician Dr. David Suchard reported

18  that "Mr. Ware developed bilateral trigger thumbs doing work activities, with symptoms having

19  subsided now that he is no longer performing repetitive hand me activities" and, after noting upon

20  examination "swelling of the proximal interphalangeal joints of both hands and both wrists and

21  decreased tactile sensitivity, proprioception and temperature sensation in the hands," diagnosed

22  plaintiff with stenosing tenosynovitis of the thumbs (trigger finger) in May of 2019.  AR 637.

23  The ALJ's rationale for finding plaintiff's trigger finger not medically determinable is not borne

24  out by the record and is error.  Because the ALJ found this impairment not medically

25  determinable rather than nonsevere, it was not necessarily calculated into the residual functional

26  capacity.  AR 17.  Accordingly, this error requires remand.

27      As to the remaining issues, the court finds no error.  Shoulder impingement was not listed

28  as an alleged disabling condition in plaintiff's application.  AR 195.  Plaintiff's impairments of

9

1   depression and hearing impairment were found to be non-severe, but because plaintiff was found

2   to have severe impairments these were nonetheless considered in plaintiff's residual functional

3   capacity.  AR 18-20.  Any error regarding depression and hearing impairment is therefore

4   harmless.  See Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017).

5          D.  Medical Opinions Properly Evaluated

6          The ALJ properly considered the medical opinions and prior administrative medical

7   findings[4] along with the other record evidence in assessing plaintiff's RFC.  AR 28-30.

8                  1.  Legal Standard for Evaluating Medical Opinions

9          The medical opinions and prior administrative medical findings were evaluated in

10  accordance with the revised regulations in 20 C.F.R. § 404.1520c that apply to claims, such as

11  plaintiff's, that are filed on or after March 27, 2017.  AR 21, 28-30.  Under these revised

12  regulations, the ALJ does not defer or give any specific evidentiary weight to any medical

13  opinions or prior administrative medical findings, including those from a claimant's treating

14  sources.  20 C.F.R. § 404.1520c(a).  Instead, all medical opinions and prior administrative medial

15  findings start on equal footing.  20 C.F.R. § 404.1520c(a).

16         The ALJ then evaluates the persuasiveness of these medical opinions and prior

17  administrative medical findings by considering the factors outlined in 20 C.F.R.

18  § 404.1520c(c)(1)-(5): supportability, consistency, relationship with the claimant (length,

19  frequency of examinations, purpose, extent of treatment relationship, examining relationship),

20  specialization, and other factors.  The ALJ must explain how they considered the factors of

21  supportability and consistency, which are the two most important factors in determining the

22  persuasiveness of a medical opinion or prior administrative medical finding and must explain how

23  persuasive they find a medical opinion or prior administrative medical finding to be based on

24  these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ is not required to explain how they

25  considered the other factors, unless they find that two or more medical opinions or prior

26  ───────────────

27  [4] Under the 2017 revisions to the regulations, state agency medical and psychological consultants'
    conclusions regarding a claimant's functional capabilities at the initial and reconsideration levels
    are now referred to as prior administrative medical findings, rather than opinions.  See 20 C.F.R.

28  § 404.1513a.

1  administrative medical findings about the same issue are both equally well-supported and

2  consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(2)-(3).

3         2.  Medical Opinions Reviewed

4        The ALJ reviewed medical opinions from consultative examiner Satish Sharma, M.D.

5  (AR 24-25, 28); treating physician Courtnie Billett, M.D. (AR 23-24, 29-30); independent

6  medical examiner David Suchard, M.D (AR 27-28, 30); treating workers compensation physician

7  Evelyn Fainsztein, M.D. (AR 23, 30); and physical therapist Cary Caulfield (AR 24, 30); as well

8  as the prior administrative medical findings from state agency physicians G. Dale, M.D., and

9  Leigh McCary, M.D. (AR 26, 28).

10           *a.  Credited Opinions*

11       Dr. Satish Sharma performed a comprehensive internal medicine evaluation of the

12 claimant on May 21, 2018.  AR 598.  He reviewed records including a CT angiogram, an October

13 2007 cervical spine x-ray, and a January 2017 lumbar spine x-ray.  AR 386-387, 598-600.

14 Dr. Sharma diagnosed diabetes with peripheral neuropathy, neck pain with intermittent radicular

15 pain in the upper extremities, back pain with intermitted radicular pain in lower extremities, joint

16 pain secondary to osteoarthritis, venous insufficiency of the lower extremities, hypertension, high

17 cholesterol, and gout.  AR 601.

18       Functionally, Dr. Sharma opined the claimant could lift and/or carry 20 pounds

19 occasionally and 10 pounds frequently; could stand and/or walk for six hours in an eight-hour

20 workday; and could stand and/or walk for six hours in an eight-hour workday. He could

21 occasionally bend and stoop; could occasionally climb ramps, stairs, kneel, or crouch; and could

22 frequently feel with the bilateral hands.  AR 601.  The ALJ found Dr. Sharma's opinion

23 "supported by his diagnoses of diabetes with peripheral neuropathy, neck pain with intermittent

24 radicular pain in the upper extremities, back pain with intermitted radicular pain in lower

25 extremities, joint pain secondary to osteoarthritis, venous insufficiency of the lower extremities,

26 hypertension, high cholesterol, and gout."  AR 28.  The ALJ found the opinion "consistent with

27 the medical evidence of record showing diagnosis of diabetes, obesity with a body mass index

28 around 38 kg/m^2, and cervical and lumbar x-rays showing degenerative disk disease (11F/17,

18).  On exam in 2019 there was decreased sensation in the lower extremities, specifically, the big

toe and mid-foot, normal range of motion of the right ankle, with mild swelling and a normal gait

consistent with diagnosis of diabetic polyneuropathy (13F/36-38)."  Id.

State Agency medical consultant, Dr. G. Dale reviewed the medical evidence of record

June 4, 2018, noting the records showed the claimant had gout with some flares, diabetes

managed with medications, and no evidence of end organ disease or renal dysfunction.  AR 76.

Dr. Dale noted plaintiff had normal physical exams in December 2017.  Lower extremities

showed patent vessels with mild plaque of the right common iliac and moderate plaque in the

superior femoral arteries with no evidence of stenosis.  Id.  Physical therapy was helpful.  Id.

Imaging showed moderate lumbar and cervical degenerative changes.  Records from Dr. Sharma

showed the claimant reported he was frequently stumbling, falling, and dropping objects, but

Dr. Dale noted no other evidence supporting the statement.  Id.  He noted that Dr. Sharma's exam

showed no edema but did show pain and mild range of motion of the hips and knees with

negative straight leg raising tests, with no spasm on exam.  Id.  He was not using an assistive

device but had a right limp.  Id.  Dr. Dale opined the evidence supported the claimant could lift

and/or carry 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk for six

hours in an eight-hour workday; could sit for six hours in an eight-hour workday; could

occasionally climb, stoop, kneel, crouch, or crawl; could frequently balance; could frequently feel

secondary to neuropathy.  AR 79.  Dr. Leigh McCary reviewed the evidence of record and

Dr. Dale's opinion, and supported Dr. Dale's conclusions.  AR 26, 98.

*b.  Discredited Opinions*

Dr. Courtnie Billett, plaintiff's treating physician who saw plaintiff every three-to-six

months since February 2, 2017, prepared a medical source statement on April 4, 2018.  AR 562-

565.  She treated plaintiff for diabetes, gout, hypertension, dyslipidemia, lumbar degenerative

disk disease, edema, and stasis dermatitis.  AR 562.  Plaintiff's symptoms pertaining to disability

were low back pain, knee pain, right lateral foot pain, numbness and tingling in the feet, low back

muscle spasms, and muscle tightness in back.  Id.  Dr. Billett reported the claimant had low back

pain and radiation into the legs that was chronic and worsened with prolonged sitting, standing,

1  and bending.  Id.  Clinical findings included decreased range of motion in the cervical and lumbar

2  spine and paralumbar muscle tenderness and spasms.  Id.  The claimant was treated with physical

3  therapy, chiropractic, yoga, heat, icing, and with the medications Norco and Soma.  Id.

4       Functionally, Dr. Billett opined the claimant could lift and/or carry 10 pounds rarely and

5  less than 10 pounds occasionally; could sit for 30 minutes at a time for a total of about two hours

6  in an eight-hour workday; could stand for 20 minutes at a time for a total of about four hours in

7  an eight-hour workday; required the opportunity to shift positions at will from sitting, standing or

8  walking and the opportunity to walk around every thirty minutes for five minutes; would require

9  15 to 20 minute unscheduled breaks every two to three hours due to pain, paresthesias, numbness,

10  back pain and stiffness, and leg pain; and would require the opportunity to elevate his feet to heart

11  level 50% to 70 % of an eight-hour workday due to venous insufficiency and stasis dermatitis.

12  AR 563-565.  He requires use of a cane at times for pain.  Id.  AR 564.  Dr. Billett opined plaintiff

13  could reach overhead 20% of a workday, would likely be off task 25% or more of a workday; was

14  capable of moderate stress; and would likely miss work more than four days per month.  AR 564-

15  565.

16       Following a work-related back injury, plaintiff underwent a physical work performance

17  evaluation on May 1, 2018, performed by Cary Caulfield, a physical therapist at Capitol Physical

18  Therapy.  AR 586-592.  On exam, the claimant exhibited abnormal range of motion of the lumbar

19  spine, strength was 4/5 in all ranges of motion, and exam of the hands revealed the claimant had

20  full ability to extend and flex (composite) both hands including with thumbs and all fingers.  AR

21  588.  The physical therapist opined the plaintiff could exert up to 10 pounds of force occasionally

22  and or negligible amounts of force constantly to move objects; could lift and carry up to 15

23  pounds (barely) and pull and push up to 10 pounds of force (rarely); could sit frequently (1/2-2/3

24  of the day); and could occasionally stand and walk (up to 1/3 of the day).  AR 591.  He had rare

25  tolerance for work requiring arms overhead and occasional tolerances for keyboarding, handling,

26  fingering, and reaching and could frequently feel.  Id.

27       Dr. David Suchard performed an independent medical evaluation of the plaintiff on

28  May 14, 2019.  AR 18, 635.  He reviewed imaging which showed some underlying degenerative

disc disease but no fractures, and noted a history of conservative treatment with medications,

physical therapy and chiropractic.  Dr. Suchard noted plaintiff was "briefly released to try return

to full work duties [following his back injury] but did not tolerate these."  AR 636.  On exam he

noted moderately restricted cervical motion, mute deep tendon reflexes in the upper extremities,

knees, and ankles, significantly reduced active lumbar motion and paralumbar spasm on resuming

upright stance, and reduced touch and temperature sensation in the feet and lower legs.  AR 637-

638.  Dr. Suchard opined plaintiff is "capable of performing a mostly seated occupation with

maximum exertion of up to 10 pounds, brief periods of standing and walking with allowance for

change in position throughout the day.  He is able to frequently reach primarily at desk level.  He

is not, however, capable of performing frequent handling, frequent fingering and/or up to constant

keyboard use, associated with his diabetic peripheral neuropathy which affects his hands,

swelling of wrists and proximal interphalangeal joints of the fingers, and bilateral trigger thumb

condition."  AR 639.

The ALJ also noted that Dr. Evelyn Fainsztein, a treating physician related to plaintiff's

work injury, gave a time-specific opinion not relevant to ongoing disability.  AR 30.

### 3.   The ALJ Did Not Err in Evaluating Medical Opinions

As noted above, the ALJ found Drs. Sharma, Dale, and McCary's opinions persuasive,

and Drs. Billett, Suchard, and Caufield's opinions unpersuasive.  Upon review, the undersigned

finds that the ALJ properly evaluated each medical opinion and remarked upon their consistency

and supportability, citing specific evidence in the record.  With respect to each discredited doctor,

the ALJ found the extent of the limitations provided  not consistent with or supported by the

medical records, citing extensively to the medical evidence.  AR 29-31.  The plaintiff provides

alternative interpretations of the evidence, but does not identify an instance in which the ALJ

failed to provide an analysis of consistency and supportability, or provided a clearly erroneous

analysis.  ECF No. 18 at 12-16.

"The ALJ is the final arbiter with respect to resolving ambiguities in the medical

evidence."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  And "if evidence is

susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

1   Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  Because the ALJ provided full analyses of

2   the medical opinions, assessing consistency and supportably with ample reference to and

3   interpretation of the medical evidence, the undersigned cannot find error here.

4          E.   Remand

5          The undersigned agrees with plaintiff that the errors identified above are harmful, and that

6   remand for further proceedings by the Commissioner is necessary.  An error is harmful when it

7   has some consequence on the ultimate non-disability determination.  Stout v. Comm'r, Soc. Sec.

8   Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ's errors in this matter must be considered

9   harmful because plaintiff's subjective testimony, the lay witness testimony, and plaintiff's trigger

10  finger, properly considered, may very well result in a more restrictive residual functional capacity

11  assessment, which may in turn alter the finding of non-disability.

12         It is for the ALJ to determine in the first instance whether plaintiff has severe impairments

13  and, ultimately, whether he is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173

14  (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social

15  Security Administration in the first instance, not with a district court").  "Remand for further

16  administrative proceedings is appropriate if enhancement of the record would be useful."

17  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to properly

18  consider plaintiff's testimony.  Further development of the record consistent with this order is

19  necessary, and remand for further proceedings is the appropriate remedy.

20                            VII.  CONCLUSION

21         For the reasons set forth above, IT IS HEREBY ORDERED that:

22         1.  Plaintiff's motion for summary judgment (ECF No. 18), is GRANTED;

23         2.  The Commissioner's cross-motion for summary judgment (ECF No. 19), is DENIED;

24         3.  This matter is REMANDED to the Commissioner for further consideration consistent

25  with this order; and

26  ////

27  ////

28  ////

                                    15

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED:  September 9, 2022.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE